[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12086
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2010
JOHN LEY
CLERK

D.C. Docket No. 07-00529-CV-KD-M

TOMMY ALPHONSO,

Plaintiff-Appellee
Cross-Appellant,

versus

ESFELLER OIL FIELD CONSTRUCTION, INC.,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

(May 24, 2010)

Before EDMONDSON, BIRCH and COX, Circuit Judges.

PER CURIAM:

Tommy Alphonso worked as a pipe fitter and was assigned to fit a drain pipe

at a facility in Coden, Alabama. After work on the pipe was completed, it was loaded

for transport onto a forklift operated by an employee of Esfeller Oil Field Construction, Inc. As the forklift passed Alphonso on its way to a weld shop, the pipe, which was at least fourteen feet long, struck Alphonso and injured him.

Invoking the court's diversity jurisdiction, Alphonso brought an Alabama state-law negligence action against Esfeller in the U.S. District Court for the Southern District of Alabama. After a bench trial, the court found Esfeller liable for Alphonso's injuries due to the negligence of its employee forklift operator, and it awarded Alphonso general damages, past medical expenses, and past and future lost wages. Liability is not contested in this appeal. Rather, both parties assert that the court erred in determining recoverable damages.

We first address Esfeller's claims of error and conclude they are without merit. Esfeller contends that to recover past medical expenses under Alabama law, a plaintiff must present expert testimony to show the reasonableness and necessity of those expenses. Alphonso presented testimony from his treating physicians attesting to the necessity of the medical procedures performed, and he introduced evidence of the actual costs of those procedures. He did not present expert testimony that the charges were reasonable. But, the medical treatments were rendered pursuant to the Louisiana Workers' Compensation Act. La. Rev. Stat. Ann. § 23:1035.1. And, a payment schedule promulgated under this Act set the charges that medical providers

2

could assess for Alphonso's treatments. *Id.* § 23:1034.2. So, even if Alphonso was required to present evidence of the reasonableness of medical charges incurred, we conclude that he presented such evidence in the form of medical bills, which reflect adjustments based on the workers' compensation payment schedule. (R.81 at 18); (R.81, Ex. 3 at 21-22.) We do not believe that Alabama law demands expert testimony—to the exclusion of all other forms of proof— to show the reasonableness of medical costs. Therefore, we conclude that the district court's finding that the expenses were necessarily incurred and reasonable was not clearly erroneous.

Esfeller next argues that the court erred by declining to deduct business expenses in calculating Alphonso's lost future wages. Prior to the injury, Alphonso earned approximately $20 per hour, but incurred costs traveling between his home and work sites. The court did not include "in its calculation any adjustment for business expenses because plaintiff's skills allowed him wages at $20 per hour, regardless of any business expenses, (e.g., gas) he would have incurred." (R.85 at 4 n.6.) Generally, unreimbursed costs, such as transportation to and from a work site, should be deducted in estimating lost income. *See Deakle v. John E. Graham & Sons,* 756 F.2d 821, 830 (11th Cir. 1985). But, Alphonso would have earned $20 per hour as a pipe fitter whether or not he incurred travel expenses. And, Alphonso could likely incur expenses in traveling to and from a future place of employment. The

3

court did not have evidence before it to calculate the amount of future travel expenses so as to compare these costs with those Alphonso had incurred while working as a pipe fitter. Given that the court had no evidence with which to predict future business expenses, its decision not to deduct prior business expenses was not clearly erroneous. *See Walker County v. Davis*, 128 So. 144, 148 (Ala. 1930) ("As to impaired earning capacity . . . it is shown to be difficult to furnish a standard for measurement, and the amount is to be fixed by the jury in their fair and enlightened discretion." (citation omitted)).

We next turn to Alphonso's claims of error and conclude that they are also without merit. Alphonso first asserts that the award of general damages for pain and suffering was not sufficient to do "substantial justice" and did not "give substantial compensation for substantial injuries." *See Orr v. Hammond*, 460 So. 2d 1322, 1323 (Ala. Civ. App. 1984) (citation omitted). The court found Alphonso was subjected to some pain over the course of his treatment, but also found that his testimony regarding the extent of his pain was not credible. (R.85 at 9.) It awarded $5,000 for pain and suffering, and Alphonso does not present a persuasive argument that this was clear error.

Alphonso next argues that the court erred in admitting and/or improperly weighed surveillance evidence. At trial, Alphonso answered no when asked whether

4

he had done anything to earn money since the accident. Esfeller then presented, and the court admitted as impeachment evidence, a video of Alphonso selling clothing out of the back of a sport utility vehicle. Alphonso argues that the video was not merely impeachment evidence, but was also substantive evidence that Alphonso was not totally disabled. He contends that Federal Rule of Civil Procedure 26 required Esfeller to disclose the video in response to a discovery request. Because Esfeller did not disclose the video before trial, Alphonso argues the video should have been excluded and/or the court should not have considered the video as substantive evidence of the extent of Alphonso's disability.

Rule 26 does not require pre-trial disclosure of evidence that may be offered at trial solely for impeachment. And, the record demonstrates that the video was admitted solely to impeach Alphonso's testimony (R.105 at 774-776). The court primarily considered the evidence for its proffered purpose—impeachment. It relied on the video to assess the credibility of Alphonso's testimony regarding pain and suffering and the extent of his disability. (R.85 at 4, 9.) While a footnote in the order addressing damages acknowledges that the video was probative of whether Alphonso was capable of engaging in light-duty work, we are not convinced that the court relied on the video to conclude that Alphonso was not permanently disabled. (R.85 at 5 n. 7.) The court's finding that Alphonso could engage in light-duty work was drawn

from the testimony and a report of Esfeller's vocational rehabilitation expert, not from the contents of the video. (R.85 at 5.) So, even if the court considered the video as substantive evidence of the extent of Alphonso's disability, and even if it was improper to do so because the video was admissible solely for impeachment, any error was harmless.

Finally, Alphonso asserts that the court erred in finding that he was capable of performing light-duty work as of June 2007. Upon review of the record, we conclude that the court's finding was supported by substantial evidence including the testimony and report of Esfeller's vocational rehabilitation expert. (R.85 at 5.) The finding was not clearly erroneous.

AFFIRMED.